No. 15-2040

IN THE
UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

In re MATTHEW RICHARD PEET and MARILYNN LOUISE PEET,
*Debtors.*

MATTHEW RICHARD PEET and MARILYNN LOUISE PEET
*Debtors-Appellants*
— v. —
J. KEVIN CHECKETT
*Trustee-Appellee*

ON APPEAL FROM THE BANKRUPTCY APPELLATE PANEL FOR THE EIGHTH
CIRCUIT COURT OF APPEALS

**BRIEF OF *AMICUS CURIAE* NATIONAL ASSOCIATION OF
CONSUMER BANKRUPTCY ATTORNEYS IN SUPPORT OF DEBTORS AND
SEEKING REVERSAL OF THE BANKRUPTCY APPELLATE PANEL'S
DECISION**

NATIONAL ASSOC. OF
CONSUMER BANKRUPTCY
ATTORNEYS, *AMICUS CURIAE*
By its attorney Tara Twomey, Esq.
National Consumer Bankruptcy
Rights Center
1501 The Alameda
San Jose, CA 95126
(831) 229-0256

September 8, 2015

# RULE 26.1 CORPORATE DISCLOSURE STATEMENT

*Peet v. Checkett,* No. 15-2040

Pursuant to FRAP 26.1 and Eighth Circuit Local Rule 26.1A, *Amicus Curiae,* the National Association of Consumer Bankruptcy Attorneys , makes the following disclosure:

1) Is party/amicus a publicly held corporation or other publicly held entity?   **NO**

2) Does party/amicus have any parent corporations?       **NO**

3) Is 10% or more of the stock of party/amicus owned by a publicly held corporation or other publicly held entity?  **NO**

4) Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?  **NO**

5) Is the party a trade association? **NOT APPLICABLE**

6) Does this case arise out of a bankruptcy proceeding?   **YES**
    If yes, identify any trustee and the members of any creditors' committee.

    CHAPTER 7 TRUSTEE, J. Kevin Checkett
    THERE IS NO CREDITORS' COMMITTEE


 _s/Tara Twomey                          Dated:  September 8, 2015
Tara Twomey, Esq.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST AND CORPORATE DISCLOSURE....................i

TABLE OF AUTHORITIES.................................................................iii

STATEMENT OF INTEREST ................................................................1

29(c)(5) STATEMENT .........................................................................2

SUMMARY OF ARGUMENT ...............................................................2

ARGUMENT..........................................................................................4

I.    STATUTORY FRAMEWORK......................................................4

      A. Chapter 7 .............................................................................4

      B. Chapter 13............................................................................5

      C. Conversion from Chapter 13 to Chapter 7................................6

II.   PROCEEDINGS BELOW .............................................................8

III.  The Bankruptcy Code Requires That the Chapter 7 Estate Only Take
      What It Would Have Been Entitled to on the Day the Petition Was
      Filed. ...................................................................................10

      A. Congress's Preference for Chapter 13 Filings.........................10

      B. The "Bad Faith" Exception..................................................13

IV.   Allowing Chapter 7 Trustee to Liquidate Post-petition Assets and
      Retain One Hundred Percent of the Proceeds Defies the Text of the
      Code and its Policy Considerations. ........................................15

      A. The Mahans' Property Interests in the Theodosia Property and Ford
         Truck Were Not Property of the Estate When Debtors Filed Their
         Chapter 13 Petition. ..........................................................15

      B.  Applying the Plain Text of Section 348 and the Supreme Court's
         Ruling in *Harris*, the Matured Property Interest that the Debtors
         Acquired in 2014 Upon the Death of the Mahans Cannot Be
         Property of the Converted Chapter 7 Estate. .............................18

CONCLUSION .....................................................................................20

Appellate Case: 15-2040     Page: 3     Date Filed: 09/23/2015 Entry ID: 4319331

# TABLE OF AUTHORITIES

**Cases**

*In re Abernathy*,
259 B.R. 330, 335-36 (B.A.P. 8th Cir. 2001)............................. 15, 16, 17

*Austin & Bass Builders, Inc. v. Lewis*,
359 S.W.2d 711 (Mo. 1962).................................................... 17

*In re Benner*,
253 B.R. 719 (Bankr. W.D. Va. 2000)..................................... 17

*In re Bobroff*,
766 F.2d 797 (3d Cir. 1985) ................................................ 11, 12

*Butner v. United States*,
440 U.S. 48, 55, (1979) ...................................................... 15

*In re Gartman*,
372 B.R. 790 (Bank. S.C. 2007)............................................. 16

*Harris v. Viegelahn.*
135 S.Ct. 1829 (2015).................................1, 2, 6, 7, 12, 15, 18, 20

*In Matter of Lybrook*,
951 F.2d 136 (7th Cir. 1991)...................................... 10, 11, 12

*Marrama v. Citizens Bank of Mass.*,
549 U.S. 365, 367 (2007) ........................................................ 7

*Murawski v. Murawski*,
209 S.W.2d 262, 265 (Mo. App. 1948)................................... 16

*N.S. Garrott & Sons v. Union Planters Nat'l Bank* (*In re N.S. Garrott Sons*),
772 F.2d 462, 466 (8th Cir. 1985)......................................... 15

*Perry v. Commerce Loan Co.,*
383 U.S. 392 (1966) ............................................................... 6

Appellate Case: 15-2040    Page: 4    Date Filed: 09/23/2015 Entry ID: 4319331

*Running v. Miller,*
  778 F.3d 711 (8th Cir. 2015) ...................................................... 1

*Taylor v. Canterbury,*
  92 P.2d 961, 965 (Colo. 2004) ................................................. 17

*United Student Aid Funds, Inc.* v. *Espinosa,*
  559 U.S. 260 (2010) .................................................................. 1

## Statutes and Rules

11 U.S.C. §109(e) ................................................................................ 5

11 U.S.C. §303 ..................................................................................... 5

11 U.S.C. §348(a) ...................................................................... 7, 13, 18

11 U.S.C. §348(f) .............................................. 1, 2, 3, 10, 12, 14, 15

11 U.S.C. §348(f)(1)(A) ............................................................. 7, 13, 18

11 U.S.C. §348(f)(2) ......................................................................... 7, 14

11 U.S.C. §363(h) ............................................................................... 12

11 U.S.C. §363(j) ................................................................................ 13

11 U.S.C. §541(a) .......................................................................... 5, 12

11 U.S.C. §541(a)(1) ............................................................................. 5

11 U.S.C. §541(a)(5) ............................................................................. 5

11 U.S.C. §726 ...................................................................................... 5

11 U.S.C. §727 ...................................................................................... 5

11 U.S.C. §1306(a) ............................................................................... 6

11 U.S.C. §1306(b) ............................................................................... 6

11 U.S.C. §1307(a) ............................................................................... 6

11 U.S.C. §1322(a)(1) ........................................................................... 5

11 U.S.C. §1325(a) ............................................................................... 6

Fed R. Bankr. P. 1017(f)(3) ................................................................. 6

Appellate Case: 15-2040     Page: 5     Date Filed: 09/23/2015 Entry ID: 4319331

**Legislative Materials**

H.R. Rep. No. 103-835 (1994) ................................................................ 10, 12

**Other Authorities**

Collier on Bankruptcy ¶ 348.02 (16th ed.). .................................................. 7

Appellate Case: 15-2040    Page: 6    Date Filed: 09/23/2015 Entry ID: 4319331

## STATEMENT OF INTEREST OF NACBA

Incorporated in 1992, the National Association of Consumer Bankruptcy Attorneys ("NACBA") is a non-profit organization of more than 3,000 consumer bankruptcy attorneys nationwide.

NACBA's corporate purposes include education of the bankruptcy bar and the community at large on the uses and misuses of the consumer bankruptcy process. Additionally, NACBA advocates nationally on issues that cannot adequately be addressed by individual member attorneys. It is the only national association of attorneys organized for the specific purpose of protecting the rights of consumer bankruptcy debtors. NACBA has filed *amicus curiae* briefs in various courts seeking to protect the rights of consumer bankruptcy debtors. *See*, *e.g.*, *Harris v. Viegelahn*, 135 S.Ct. 1829 (2015); *United Student Aid Funds, Inc.* v. *Espinosa*, 559 U.S. 260 (2010); *Running v. Miller,* 778 F.3d 711 (8th Cir. 2015).

The NACBA membership has a vital interest in the outcome of this case. From its work on behalf of consumer debtors, NACBA has developed extensive knowledge of, and unique insights into, the statutory provisions and policy considerations presented by this case. NACBA understands that Congress amended the Bankruptcy Code in the Bankruptcy Reform Act of 1994 (the "1994 Amendments") to ensure that debtors are not penalized for trying chapter 13 before converting to chapter 7 in good faith. Under 11 U.S.C. §348(f), the chapter 7 estate

1

is this case was not entitled to sale proceeds attributable to property interests that matured post-petition. The text, structure, and history of the relevant Bankruptcy Code provisions, as well as equitable considerations and public policy, confirm that interpretation.

## STATEMENT UNDER FED. R. APP. P. 29(c)(5)

No party's counsel authored this Amicus Curiae Brief in whole or in part; no party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and no person, other than the amicus curiae, it members, or its counsel, contributed money that was intended to fund preparing or submitting the brief.

## SUMMARY OF ARGUMENT

The Debtors, Marilynn Louise Peet and Matthew Richard Peet, and the Trustee Kevin Checkett, have focused their arguments in this case on whether or not the filing of a bankruptcy petition severs a joint tenancy under Missouri law. The joint tenancy issue, however, is irrelevant because section 348(f) and the Supreme Court's recent decision, *Harris v. Viegelahn*, 135 S. Ct. 1829 (2015), are controlling in this case. Here, the Debtors originally filed for chapter 13 bankruptcy in 2011. At the time of their original filing, Debtors had an interest in real and personal property, which they held has joint tenants with Marilynn Peet's

Appellate Case: 15-2040    Page: 8    Date Filed: 09/23/2015 Entry ID: 4319331

parents, the Mahans.  More than two years later, in January 2014, the debtors

converted their chapter 13 case to one under chapter 7.  Upon conversion, the

chapter 7 bankruptcy estate consisted only of property belonging to the Debtors at

the time of the chapter 13 petition was filed.  That property included a fifty percent

interest in real and personal property and certain expectancy, but not yet matured,

interests in the same property.   The matured interest that the Peets acquired upon

the deaths of the Mahans and years after the original petition date must be

excluded from the chapter 7 estate.  Including the entire property interests in the

chapter 7 estate, as the Trustee argues, would not only violate section 348(f), but

would also run counter to Congressional policy of encouraging debtors to try,

without penalty, reorganization under chapter 13 before seeking relief under

chapter 7.  Here debtors would be effectively punished for trying chapter 13 for

more than two years, but ultimately seeking liquidation under chapter 7.

Appellate Case: 15-2040     Page: 9     Date Filed: 09/23/2015 Entry ID: 4319331

# ARGUMENT

## I. STATUTORY FRAMEWORK

The Bankruptcy Code provides several avenues for people and entities weighed down by debt to repay their creditors to the extent they are able, receive a discharge of most remaining debts, and exit bankruptcy with a clean financial slate. This case involves two options Congress has provided for individual debtors—chapter 7 and chapter 13. Chapter 13, the chapter under which the Peets originally filed, provides for repayment of debts from the debtors' future earnings. Chapter 7, by contrast, provides for repayment of debts by liquidating a debtor's existing non-exempt assets. Because chapter 13 is often less disruptive to debtors and can provide greater relief to creditors, Congress has long sought to encourage debtors to take advantage of that option. Among other things, Congress has permitted debtors who pursue chapter 13 to later convert to chapter 7 without penalty in the event Chapter 13 does not work out.

### A. Chapter 7

In a bankruptcy under Chapter 7, debts are paid by liquidating the debtor's non-exempt assets. Filing a bankruptcy petition under any chapter creates an "estate." 11 U.S.C. §541(a). The chapter 7 estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case"—that is,

4

the debtor's pre- petition assets. *Id*. §541(a)(1). The chapter 7 estate does *not*
include property that the debtor acquires after commencement of the case, except
certain property acquired within 180 days of the filing of the petition. *Id*.
§541(a)(5). Non-exempt assets are collected and may be sold by the trustee, who
distributes the proceeds to creditors in accordance with the priorities set by the
Bankruptcy Code. *Id*. §726. Following these steps, for a consumer debtor, most
debts are discharged. *Id*. §727. In the vast majority of cases, a chapter 7 debtor
receives his or her discharge within three to four months of the petition date, and
the case is closed.

### B. Chapter 13

Chapter 13 is a debt restructuring program available to certain debtors with
steady income. 11 U.S.C. §109(e). It differs from chapter 7 in two key respects.
First, chapter 13 is completely voluntary. A debtor must elect to petition for
bankruptcy under chapter 13. *See id*. §303 (limiting involuntary bankruptcy cases
to chapters 7 and 11 "only"). Second, chapter 13 permits debtors to repay debts
using their "future income" rather than proceeds from the sale of their assets. *Id*.
§1322(a)(1). The chapter 13 estate thus includes, in addition to a debtor's non-
exempt assets at the time of filing, post-petition property that the debtor acquires or
earns "after commencement of the case, but before the case is * * * converted to a
case under chapter 7." *Id*. §1306(a). Creditors are typically paid from the debtor's

Appellate Case: 15-2040    Page: 11    Date Filed: 09/23/2015 Entry ID: 4319331

post-petition earnings over a period of three to five years.

Chapter 13 offers significant advantages over chapter 7 to debtors and creditors alike. Because creditors are paid out of the debtor's future earnings, the debtor is able to keep existing assets, see 11 U.S.C. §1306(b)— most importantly, a house—and protect those assets from liquidation. Creditors also benefit. By law, the confirmed chapter 13 plan must give them at least as much as they would receive under a chapter 7 liquidation. *Id.* §1325(a)(4), (5). And in practice creditors often receive more under chapter 13, particularly where a debtor has regular income but no assets subject to liquidation. In light of those advantages, Congress has expressed a strong policy of encouraging debtors to take advantage of chapter 13 where possible. *See Perry v. Commerce Loan Co.,* 383 U.S. 392, 395 (1966); H.R. Rep. No. 103- 835, at 57 (1994).

### C. Conversion from Chapter 13 to Chapter 7

Consistent with its policy of encouraging debtors to choose chapter 13, Congress has made it easy for debtors to fall back on chapter 7 in the event chapter 13 does not work out. The Bankruptcy Code grants a chapter 13 debtor the non-waivable right to convert a chapter 13 case to a chapter 7 case "at any time" by filing a notice with the court. 11 U.S.C. §1307(a); *see Harris*, 135 S.Ct at 1835-36. No motion or court order is necessary. Fed. R. Bankr. P. 1017(f)(3).

Conversion "does not commence a new bankruptcy case." 15, 16,, on

6

Bankruptcy ¶ 348.02 (16th ed.). Rather, it transforms the debtor's pending case from one under chapter 13 into one under chapter 7. *See* 11 U.S.C. §348(a) (conversion "does not effect a change in the date of the filing of the petition, the commencement of the case, or the order for relief"). Conversion also affects what property is considered property of the estate. As discussed above, a chapter 13 estate includes the debtor's post-petition earnings and after-acquired assets while a chapter 7 estate does not. *See Harris*, 135 S.Ct. at 1835. The statute addresses that incongruity by providing that, in general, the "property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition," provided the property "remains in the possession of or * * * under the control of the debtor on the date of conversion." *Id.* §348(f)(1)(A). Thus, after conversion, the estate generally consists of the same property that would have been included in the estate had the debtor filed under chapter 7 in the first place, and excludes property the debtor acquired after filing the chapter 13 petition.

Congress created an exception to that general rule for "bad faith" conversions. If the debtor converts in bad faith—e.g., if the debtor "fraudulently conceal[s] significant assets," *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007)—the chapter 7 estate will consist of the debtor's property "as of the date of conversion," 11 U.S.C. §348(f)(2). Thus, only where a debtor acts in bad faith are post-petition assets considered "property of the estate in the converted

7

case" and subject to distribution to creditors after conversion. *Id*.

## II. PROCEEDINGS BELOW

The Debtors, Marilynn Louise Peet and Matthew Richard Peet, filed their voluntary Chapter 13 petition on December 5, 2011. R.2.[1] On their initial Chapter 13 petition, Debtors listed a fifty percent interest in real property located in Theodosia, Missouri ("Theodosia Property"), which was owned jointly by the Debtors and Marilyn Peet's parents, Ernest and Audra Mahan. R.51 Debtors and the Mahans held title to the Theodosia Property as joint tenants with the right of survivorship. R.51. Debtors additionally listed a fifty percent ownership interest in a 2005 Ford Truck (" Ford Truck"), which was titled in the names of Mrs. Peet and her father, Mr. Mahan. R.54. Debtors exempted $460 in the Ford Truck under the Missouri exemption statutes. R.56. After more than two years and several attempts to propose a confirmable plan, the Debtors converted their case to chapter 7 on January 23, 2014. R.3-29. Kevin Checkett was appointed the chapter 7 trustee for the converted case. R.30.

Following conversion of the case, Mrs. Peet's father and joint property owner, Mr. Mahan, died on April 14, 2014. R.86. The following day, Mrs. Mahan died. R.88. By operation of law, the remaining ownership interest in the Theodosia

---

[1] "R.__" citations are to the record appendix submitted by the Debtors.

Appellate Case: 15-2040     Page: 14     Date Filed: 09/23/2015 Entry ID: 4319331

Property and the Ford Truck vested in the Debtors upon the death of the Mahans. Debtors, thus acquired these interests more than two years after the Debtors filed for relief under chapter 13, and almost three months after the Peets converted their case to chapter 7.

Trustee Checkett then sought to sell both the Theodosia Property and the Ford Truck, and he claimed one hundred percent of the proceeds (less the $460 Ford Truck exemption) belonged to the chapter 7 estate. R.84, 122. Trustee Checkett argued that the chapter 13 petition did not sever the joint tenancy, and the death of the Mahans "vested" the bankruptcy estate with the entire property. Tr. Brief; R.91. Thus, the Trustee acknowledges that the Debtors did not have a vested interest in the whole property at the time of their chapter 13 petition. According to the Trustee because the Debtors' expectancy interest happened to mature prior to the closing of the case, although long after the case would have closed had it originally been filed under chapter 7—the chapter 7 estate became entitled to that vested interest. The Trustee argued, and the bankruptcy court agreed, that the filing of the chapter 13 petition did not sever the joint tenancy. Thus, the court held the chapter 7 estate held the entire interest in the Theodosia Property and Ford Truck, and was entitled to all the sale proceeds, except Debtors' exemption in the Ford Truck.

9

## III. The Bankruptcy Code Requires That the Chapter 7 Estate Only Take What It Would Have Been Entitled to on the Day the Petition Was Filed.

The text, structure, and history of the relevant Bankruptcy Code provisions all point to the same conclusion: the Peets, not their creditors, are entitled to the proceeds of the sale of the Theodosia Property and Ford Truck attributable to the Mahans' interest in the property, which vested in the Debtors long after they filed their chapter 13 petition, and after they converted their case in good faith.

### A. Congress's Preference for Chapter 13 Filings

Congress enacted Section 348(f) in 1994 to "resolve a split in the case law about what property is in the bankruptcy estate when a debtor converts from chapter 13 to chapter 7." H.R. Rep. No. 103-835, at 23, 57. Before the 1994 Amendments, federal courts had divided over whether post-petition property became part of the chapter 7 estate upon conversion from chapter 13. *In Matter of Lybrook*, 951 F.2d 136 (7th Cir. 1991), the Seventh Circuit held that the entire chapter 13 estate became part of the chapter 7 estate upon conversion, and therefore post-petition assets were available for liquidation and distribution to creditors. *Id*. at 136-138. The Seventh Circuit determined that section 348, as it then existed, left the court at a "semantic impasse." *Id.* at 137. Troubled by the possibility of "strategic, opportunistic behavior" by debtors using conversion to shield post-petition property from creditors, the court concluded that "the only cure

10

is to rule that the Chapter 13 estate passes unaltered into Chapter 7 upon conversion." *Id*. at 137- 138. Thus, in *Lybrook*, land the debtor inherited after his Chapter 13 filing but before conversion to chapter 7 was deemed part of the chapter 7 estate and subject to liquidation—even though it would have been excluded had he originally filed under chapter 7.

In *In re Bobroff*, 766 F.2d 797 (3d Cir. 1985), by contrast, the Third Circuit held that post-petition property did not become part of the converted chapter 7 estate. *Id*. at 799-800, 803. That result, the court explained, "is consonant with the Bankruptcy Code's goal of encouraging the use of debt repayment plans rather than liquidation." *Id*. at 803. "If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished." Id. Contrary to the Seventh Circuit's rationale in *Lybrook*, the Third Circuit concluded that "when chapter 13 does prove unavailing no reason of policy suggests itself why the creditors should not be put back in precisely the same position as they would have been had the debtor never sought to repay his debts." Id.

In the 1994 Amendments, Congress came down squarely in favor of debtors who try chapter 13. It rejected "cases such as Matter of Lybrook, and adopt[ed] the

11

reasoning of *In re Bobroff*." H.R. Rep. No. 103-835, at 57 (citations omitted). In

endorsing *Bobroff*, Congress recognized that *Lybrook*'s rule allowing creditors to

reach post-petition assets after conversion to chapter 7 would pose a "serious

disincentive to chapter 13 filings." *Id.*

The Supreme Court recently recognized that the text of the Code strongly

supports the Congressional preference for chapter 13. In *Harris v. Viegelahn*, the

Court noted that "a Chapter 7 estate does not include the wages a debtor earns or

the assets he acquires after the bankruptcy filing. 11 U.S.C. §541(a)(1). Thus,

while a Chapter 7 debtor must forfeit virtually all his prepetition property, he is

able to make a 'fresh start' by shielding from his creditors his postpetition earnings

and acquisitions." 135 S.Ct. at 1835. The *Harris* Court also stated that, "[a]bsent a

bad faith conversion, § 348(f) limits a converted Chapter 7 estate to property

belonging to the debtor 'as of the date' the original Chapter 13 petition was filed."

*Id.* at 1837.

In this case had the Debtors originally filed for chapter 7 in 2011, the chapter

7 estate would have included a fifty percent interest in the Theodosia Property and

Ford Truck, plus an expectancy, but not vested, interest in the same property. If

permitted by the court, the trustee could have sold the property pursuant to 11

U.S.C §363(h) (permitting the sale of property owned by debtors and nondebtors in

Appellate Case: 15-2040     Page: 18     Date Filed: 09/23/2015 Entry ID: 4319331

certain circumstances).  Upon sale, the chapter 7 estate would have received fifty percent of the proceeds, plus a nominal amount, if any, for the value of the expectancy interest.  The Mahans would have been entitled to a share of the proceeds commensurate with their interest in the property.  11 U.S.C. §363(j).  The chapter 7 estate most certainly would not have been entitled to the "entire" property or one hundred percent of the proceeds from the sale of the Theodosia Property and the Ford Truck in 2011 when the Debtors filed their petition for relief.  Accordingly, the chapter 7 estate is not entitled to those interests now.

### B.    The "Bad Faith" Exception

A chief distinction between chapter 7 and chapter 13 is that, under chapter 7, creditors are paid using prepetition assets, while under Chapter 13 creditors are paid using post-petition assets. Congress preserved that distinction in cases that are converted from chapter 13 to chapter 7. It provided that the estate property in the converted chapter 7 case is determined "as of the date of filing of the petition," 11 U.S.C. §348(f)(1)(A), and that "the date of the filing of the petition" continues to be the date of the original chapter 13 filing.  *Id*. §348(a). Accordingly, once a debtor converts their case to chapter 7, money the debtor earned or asset acquired after they filed the chapter 13 petition are carved out from the chapter 7 estate— and placed off-limits to creditors.

13

Congress created one narrow exception to that rule, providing that, "if the debtor converts a case under chapter 13 in bad faith," the estate property "shall consist of the property of the estate as of the date of conversion." 11 U.S.C. §348(f)(2) (emphasis added). That exception punishes bad-faith conversions by making otherwise-immune post-petition earnings and other post-petition assets available for liquidation and distribution to creditors after conversion to Chapter 7.

The decision below defies that design. Section 348(f) makes clear that post-petition property should be distributed to creditors after conversion to chapter 7 *only* if the debtor converted in bad faith. The bankruptcy court, however, allowed Trustee Checkett to liquidate post-petition property and keep all of the proceeds following a good-faith conversion, even though that would not have been possible if the Debtors originally filed under chapter 7. In doing so, it has effectively subjected the Peets to the penalty for bad-faith conversion without any finding—or even allegation—of bad faith. That is flatly inconsistent with the framework section 348(f) prescribes, and it will discourage debtors from invoking chapter 13 as Congress intended.

14

**IV. Allowing Chapter 7 Trustee to Liquidate Post-petition Assets Defies the Text of the Code and its Policy Considerations**

**A. The Mahans' Property Interests in the Theodosia Property and Ford Truck Were Not Property of the Estate When Debtors Filed Their Chapter 13 Petition.**

Under section 348(f) and the Supreme Court's recent decision in *Harris*, the chapter 7 estate is comprised only of "property belonging to the debtor 'as of the date' the original Chapter 13 petition was filed." The bankruptcy court correctly looked to state law to determine the Debtors' interest in jointly held property, but the bankruptcy court incorrectly applied state law in the Debtors' converted case. *See N.S. Garrott & Sons v. Union Planters Nat'l Bank* (*In re N.S. Garrott Sons*), 772 F.2d 462, 466 (8th Cir. 1985) (citing *Butner v. United States*, 440 U.S. 48, 55, (1979)) ("The nature and extent of the debtor's interest in property are determined by state law . . . [but] once that determination is made, federal bankruptcy law dictates to what extent that interest is property of the estate.")

When the Debtors filed their chapter 13 petition, there is no question that the Debtors' own share of the Theodosia Property and the non-exempt portion of the Ford Truck were part of the original estate. However, it is equally clear that the Mahans' interest in the real property and truck were not property of the estate. The bankruptcy court correctly stated that under Missouri state law a "joint tenancy is based upon the theory that together the joint tenants have a single estate –they hold by the moiety (or half) and by the whole," Bk. Ct. Op. at 3 (*citing In re Abernathy*,

15

259 B.R. 330, 335-36 (B.A.P. 8th Cir. 2001); R.110. However, the bankruptcy court neglects the remainder of the *Abernathy* decision upon which it relies for its characterization of the joint tenancy. In that decision, the *Abernathy* court distinguishes what interests become part of the Debtors' bankruptcy estate when property is held as joint tenants versus tenants by the entireties.

> "The distinction between entireties and joint tenancies is significant. With entireties property, the whole of the property comes into the estate… With joint tenancy property, only the debtor's share of the property comes into the estate in the first place; the non-debtor's share is never at risk in the debtor's bankruptcy case and so there is no need (such as in *Garner*) to protect the non-filing joint tenants' interests."

> *Id.* at 337; *see also In re Gartman*, 372 B.R. 790 (Bankr. D.S.C. 2007)

("While the scope of 'estate property' under § 541 is broad, a debtor's bankruptcy estate does not include third-party's undivided interest in property co-owned with the debtor"). This understanding of how joint tenancies are treated in bankruptcy is consistent with longstanding Missouri law that holds tenants by the entireties vests the entire estate in each grantee—they are seized of the entirety—but a joint tenant succeeds to the whole only by right of survivorship. *See Murawski v. Murawski*, 209 S.W.2d 262, 265 (Mo. App. 1948). Stated another way, in Missouri, tenants by the entireties are vested, or seized, in the whole property at the moment the interest is created, but the whole of the property held by joint tenants with rights of survivorship only vests in the surviving tenant upon the death of the

16

other. In order for the right of survivorship to become a vested right, one joint

tenant must survive the other while the joint tenancy remains in tact. Prior to that

time, joint tenants retain their ability to alienate their interests in real and personal

property at will and without consent of the other joint tenants. *Cf. Austin & Bass*

*Builders, Inc. v. Lewis*, 359 S.W.2d 711 (Mo. 1962) (by contrast an attempt to

convey property by one of two tenants by the entireties conveys nothing and is

void); *see also Taylor v. Canterbury*, 92 P.2d 961, 965 (Colo. 2004) (the right of

survivorship is an expectancy that is not irrevocably fixed upon creation; rather it

arises only upon success in the ultimate gamble, survival, and then only if the unit

of estate has not theretofore been destroyed).

The bankruptcy court mistakenly relied on *In re Benner*, 253 B.R. 719

(Bankr. W.D. Va. 2000) and its interpretation of Virginia law in deciding this case.

In *Benner,* the court held that under Virginia law a debtor holding property as a

joint tenant with rights of survivorship already owned the entire property. That is,

the joint tenants were both seized in the whole. The court found that its treatment

of joint tenancies with rights of survivorship was consistent with the treatment of

tenants by the entireties property. *Id.* at 723. Indeed, the court held that the law as

it related to tenants by the entireties was equally applicable to property held as

joint tenants with rights of survivorship. By contrast, under Missouri law there is a

significant different between entireties and joint tenancies. *See Abernathy*, 259

17

B.R. at 337.  The bankruptcy court erred in failing to recognize that *Benner* was inapplicable to this case.

Under Missouri law, the Mahans interest in both the Theodosia Property and Ford Truck were not property of the estate when the Debtors filed their chapter 13 petition in 2011.

**B. Applying the Plain Text of Section 348 and the Supreme Court's Ruling in *Harris*, the Matured Property Interest that the Debtors Acquired in 2014 Upon the Death of the Mahans Cannot Be Property of the Converted Chapter 7 Estate.**

The Mahans' interest in the Theodosia Property and Ford Truck did not vest in the Debtors until the Mahans died in 2014, almost two and a half years after the Debtors filed their original chapter 13 petition.  Three months prior to the Mahans death, the Debtors converted their case from one under chapter 13 to one under chapter 7.

A chief distinction between chapter 7 and chapter 13 is that, under chapter 7, creditors are paid using pre-petition assets, while under chapter 13 creditors are paid using post-petition assets. Congress preserved that distinction in cases that are converted from chapter 13 to chapter 7. It provided that the estate property in the converted Chapter 7 case is determined "as of the date of filing of the petition," 11 U.S.C. §348(f)(1)(A), and that "the date of the filing of the petition" continues to be the date of the original chapter 13 filing.  *Id*. §348(a). Accordingly, once a

debtor converts his case to chapter 7, property interests acquired after the petition, with limited exception not applicable here, are not property of the chapter 7 estate.

Congress sought to encourage debtors to attempt Chapter 13 bankruptcy, and it recognized that enabling creditors to obtain post-petition property following conversion would be a serious disincentive to pursuing chapter 13. The 1994 Amendments clarified that, following conversion, post-petition property would not become part of the chapter 7 estate (and thus would not be distributed to creditors) absent bad faith. The bankruptcy court's ruling in this case recreates the same disincentive that Congress sought to eliminate.  Debtors with unmatured property interests—no matter how remote the contingency—would favor a chapter 7 case from the outset. Paradoxically, had the Debtors, here, simply filed a chapter 7 case in 2011, it would have been closed well before the Mahans' death. The after-acquired property interest would thus have served to aid the Debtors in making the fresh start they originally sought.

In effect, the chapter 7 estate is seeking to double-dip: the Debtors' post-petition income was property of the chapter 13 estate for more than two years, and now based on the bankruptcy court's decision the Trustee is empowered to liquidate and keep all the proceeds from the Debtors' after-acquired assets. The Mahans' death becomes a fortuitous windfall for the Debtors' outstanding

19

creditors. Under these facts, the Debtors' are penalized for two years of good faith effort in chapter 13. Such an outcome cannot be reconciled with Congress's preference for chapter 13 over chapter 7, or the Supreme Court's recent decision in *Harris v. Veigleahn.*

## CONCLUSION

For the reasons stated above, *amicus curiae* asks this court to reverse the decision of the Bankruptcy Appellate Panel below.

/s/ Tara Twomey
NATIONAL ASSOC. OF CONSUMER BANKRUPTCY
ATTORNEYS, *AMICUS CURIAE*
BY ITS ATTORNEY
TARA TWOMEY, ESQ.
NATIONAL CONSUMER BANKRUPTCY RIGHTS CENTER
1501 The Alameda
San Jose, CA 95126
(831) 229-0256

Appellate Case: 15-2040    Page: 26    Date Filed: 09/23/2015 Entry ID: 4319331

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATION

I hereby certify that the foregoing Brief contains approximately 4,566 words, excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii). In preparing this certification, I relied on the word-processing system used to prepare the foregoing Brief.

The foregoing Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word 14-point Times New Roman font.

Dated: September 8, 2015.

 s/Tara Twomey
Tara Twomey

Appellate Case: 15-2040    Page: 27    Date Filed: 09/23/2015 Entry ID: 4319331

# CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system on September 9, 2015.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Tara Twomey
NATIONAL ASSOC. OF
CONSUMER BANKRUPTCY
ATTORNEYS, *AMICUS CURIAE*
By its attorney Tara Twomey, Esq.
National Consumer Bankruptcy
Rights Center
1501 The Alameda
San Jose, CA 95126
(831) 229-0256

Appellate Case: 15-2040     Page: 28     Date Filed: 09/23/2015 Entry ID: 4319331